RUTAN & TUCKER, LLP
Meredith L. Williams (State Bar No. 292888)
mwilliams@rutan.com
18575 Jamboree Road, 9th Floor
Irvine, CA 92612
Telephone: 714-641-5100
Facsimile: 714-546-9035

*Attorneys for Plaintiff*
AVREK LAW FIRM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

| | |
|---|---|
| AVREK LAW FIRM, a California Professional Law Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KIMBERLY N. ACOSTA (also known as KIMBERLY NAVARRO), an individual,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. FEDERAL PRODUCT DISPARAGEMENT AND TRADE LIBEL IN VIOLATION OF THE LANHAM ACT (15 U.S.C. §1125)**<br><br>**2. COMMON LAW DEFAMATION AND TRADE LIBEL**<br><br>**3. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff AVREK LAW FIRM, a California Professional Law Corporation, ("Plaintiff" or "Avrek Law"), by and through its undersigned attorneys, for its Complaint against Defendant KIMBERLY N. ACOSTA (also known as KIMBERLY NAVARRO) ("Defendant" or "Ms. Navarro"), alleges as follows:

## NATURE OF THE ACTION

1. Avrek Law is an award-winning and highly regarded law firm focused on helping personal injury victims recover for damages sustained in connection with vehicle accidents, medical malpractice, construction site accidents, and more. Founded by Maryam Parman, who is known throughout Southern California as the SUPER WOMAN SUPER LAWYER™ in view of her success on behalf of clients over the last 25+ years, Avrek Law's highly effective personal injury practice has helped tens of thousands of clients recover compensation. Avrek Law's team now has decades of combined experience, serves clients throughout California and in six other states, and has an "A+" rating with the Better Business Bureau.

2. This action arises out of Ms. Navarro's false and misleading statements impugning Avrek Law's reputation and legal services, including in at least one video posted to Defendant's TikTok account (i.e. published to her over 46,000 followers) and a relentless, baseless smear campaign conducted on Avrek Law's social media.

3. Defendant is a social media influencer who, on information and belief, financially benefits from garnering as many views on her account/content as possible. As part of that effort, Ms. Navarro in September 2025 started posting videos accusing an Avrek Law attorney of assaulting her at the upscale bar of the Pendry in Newport Beach on August 15, 2025. Ms. Navarro's own post confirms that both the police and Pendry management reviewed video footage of the purported "assault" the evening it allegedly occurred and denied her "justice," i.e. determined her claim lacked merit. Indeed, the authorities who viewed the security footage as to Ms. Navarro's claim at the time did not detain or even question the Avrek Law attorney, who stayed with Pendry staff voluntarily pending review of the claim, debunked within half an hour.

4. Not satisfied with her unfounded attempts to ruin an apparently innocent man's personal reputation (with several dramatic videos about the "assault" garnering plenty of views in September-November 2025), Ms. Navarro recently decided to start disparaging Avrek Law. Specifically, on or about December 9, 2025, Ms. Navarro posted a disparaging video on TikTok telling all of her followers that Avrek Law is a personal injury firm that ironically hires perpetrators of assault. Around this time, Ms. Navarro likewise began posting (and soliciting others to post) comments on Avrek Law's social media accounts and promotional reels to the same effect, i.e. communicating directly to Avrek Law's followers, including current and/or potential clients, that Avrek Law is a firm that has kept a perpetrator of assault on staff (*e.g.* from Ms. Navarro herself: "Make [sic] a reel about how ironic it is to have a personal injury attorney cause harm to a woman for no reason!!"; and from another poster who presumably saw her reel: "Didn't one of you abuse an innocent woman in Newport," "what about abusing woman," and "cucks"). Ms. Navarro's video reel on her account and disparaging comments on Avrek Law's posts were thus intended to cause and have already caused harm to Avrek Law's goodwill and business reputation, including pecuniary harm, based on Ms. Navarro's efforts to promote herself as a victim while painting her purported "assailant" and his law firm as guilty until proven innocent.

5. Accordingly, Avrek Law brings this action to secure the video footage that led police and Pendry staff to discredit Ms. Navarro's claim (by prompt subpoena to the Pendry for this critical evidence), and for (1) federal product disparagement and trade libel under the Lanham Act, (2) common law business defamation and/or trade libel (also referred to as product disparagement and injurious falsehood), and (3) intentional interference with prospective economic advantage, all per Ms. Navarro's baselessly disparaging Avrek Law and its attorneys to promote her own platform. Those attorneys have dedicated their careers to helping people who have suffered real injuries, and the substantial and irreparable harm Ms. Navarro is inflicting with her already debunked, false claim of victimhood must stop.

## PARTIES

6. Plaintiff Avrek Law is a California Professional Law Corporation with a place of business located at 2350 SE Bristol Street, Suite B, Newport Beach, California 92660.

7. Upon information and belief, Defendant Kimberly N. Acosta (also known as Kimberly Navarro) is an individual residing in Orange County, specifically located at 7 Lighthouse Pt, Aliso Viejo, California 92656-1379 and/or 1110 W Town and Country Rd #412, Orange, California 92868.

## JURISDICTION AND VENUE

8. This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, et seq. (the "Lanham Act"). This Court has original subject matter jurisdiction over Avrek Law's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) & (b), and pendent jurisdiction over the state law claims under 28 U.S.C. § 1367 in that said claims are joined with substantially related claims under the Lanham Act.

9. This Court has personal jurisdiction over Defendant because she is a resident of this judicial district, and Ms. Navarro has also directed extensive social media content (including her own reels/posts, etc., and comments on Avrek Law's marketing) to consumers within this judicial district.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this judicial district and because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

11. Avrek Law's founder, Maryam Parman, has been practicing law and focusing on helping personal injury victims since at least as early as 1998, and has spent over fifteen years building Avrek Law's brand and reputation.

12. Today, Avrek Law is an award-winning and highly regarded law firm focused on helping personal injury victims recover for damages sustained in connection with vehicle accidents, medical malpractice, construction site accidents,

and more. Avrek Law's highly effective personal injury practice has now helped tens of thousands of clients recover compensation.

13. Avrek Law's team now has decades of combined experience, serves clients throughout California and in six other states, and has an "A+" rating with the Better Business Bureau ("BBB"), as shown below, which is a true and correct screenshot image from https://www.bbb.org/us/ca/newport-beach/profile/personal-injury-lawyer/avrek-law-1126-1000066643 (taken on December 12, 2025):




14. In addition to the now countless stories from satisfied clients shared with Avrek Law, and reflected only in part in the firm's online marketing, the reviews from Avrek Law's clients posted directly to the BBB praise *e.g.* the firm's "transparency and professionalism" and "commitment to client care," and the following screenshot image from the BBB website (URL noted above) reflects those "Latest Reviews":



15. Those positive reviews—shared by consumers directly with the BBB (i.e. not by Avrek Law)—are just the tip of the iceberg, reflecting only a few of the tens of thousands of clients who have trusted their personal injury cases to Avrek Law and been extremely satisfied with the results. In short, Avrek Law is a firm composed of attorneys and staff with the highest commitment to client service, especially helping clients who have been suffered from physical injuries and related trauma.

16. Defendant in this action, Ms. Navarro, is a social media influencer who has never hired Avrek Law or had any direct experience with its legal services.

17. As asserted in social media content posted to her followers starting in September 2025, Ms. Navarro claims that on the evening of Friday, August 15, 2025 an Avrek Law attorney physically assaulted her at the upscale bar of the Pendry in Newport Beach, California. A true and correct copy of one of the "Photos for Bar Pendry" in Newport Beach (taken from its Yelp page) is copied here:



18. In particular, Ms. Navarro posted a video on September 18, 2025 about "an assault that I endured at Pendry Newport Beach" on August 15, 2025, over a month earlier. In that video, she describes seeing her friends across the room: "as I'm walking to them, this man" (whose photo she posts in the video, and whom she has more recently identified as an Avrek Law attorney)[1] "sticks his hand out right where my neck is at, what I felt like a choke, smothered my face, and I just kept walking."

19. Defendant got Pendry security and the police involved, who apparently determined that she should also be removed from the bar (as a caption confirms: "cops kick[ed] us out while I was a victim of assault"). By her own account, they reviewed the security footage (as her video caption reads: "Footage has been seen by" the authorities, i.e. "detectives and the Pendry manager") and determined that "he did not strangle me." Thus, as Ms. Navarro states, "no one helped" her get what she perceived to be "justice": "Not Pendry, not the police, not the detective, no lawyer. No one."

20. In fact, while Ms. Navarro claims she was choked in the middle of her walk across the bar to her friends, the police and Pendry staff who reviewed the security footage to see what happened when she first made that claim determined they did not need to detain or even question her purported assailant. He stayed voluntarily with Pendry security while police evaluated her claim for about thirty minutes, then he left after they concluded he did not choke her—no questions asked.

21. In short, Ms. Navarro told Pendry security and police that she had been randomly choked by a stranger on her walk across the bar, but the authorities who viewed the security footage as to her claim at the time debunked the assertion of any physical assault/choking within half an hour, confirming her claim lacked merit.

---

[1] Avrek Law does not condone and will not further Ms. Navarro's efforts to dox this man by including his name in this Complaint. Ms. Navarro initially harassed him by direct messaging his wife unauthorized photographs Ms. Navarro took of him, stating "On August 15 he was at Pendry Newport Beach and he assaulted me" [etc.], causing extreme personal distress for his family, before starting to post his name and photo online to encourage public harassment in violation of California Penal Code § 653.2. Plaintiff will secure the Pendry's security footage (which led police and Pendry security to discredit Ms. Navarro's apparently false claim) as soon as possible,

22. On information and belief, no physical assault occurred involving any Avrek Law attorney and Ms. Navarro on August 15, 2025. Even without the accused Avrek Law attorney's own detailed account of his interactions that evening—which included several interesting conversations with friends and new acquaintances, but not randomly choking a woman he did not know—Ms. Navarro's account is dubious. How does one get choked while walking across an upscale bar space like the Pendry—while in eyesight of (and walking towards) friends—with no one seeing it happen? How is it that she "just kept walking" on being choked and having her face smothered?

23. Most concerning on many levels, Ms. Navarro claims that the alleged assault caused her to spit up blood immediately afterward and required her to go to the emergency room ("ER")—which she extensively photographed and filmed at the time to include in later posts and video (with music added) on social media.

24. On information and belief, a real incident of choking would not cause Ms. Navarro to spit up blood, and she should seek immediate medical attention to the extent she has not already been advised of a diagnosis/cause. Strangulation typically causes only compression of blood vessels and/or the airway in the neck, not the kind of internal trauma that would cause bleeding into the respiratory or digestive tract that could then be seen in spit. While the records from Ms. Navarro's ER visit would provide the best indication of the actual cause of her bleeding (assuming a diagnosis was determined), potential causes include dental issues (including recent dental work or gum disease) and throat irritation and/or inflammation of the stomach lining, both of which could be related to drinking alcohol or any illness involving coughing.

25. While Ms. Navarro's account of the August 15, 2025 incident does not mention her having any drinks, irritation caused by drinking is a plausible explanation for any blood she saw in her spit immediately following her time the bar. Even if she was not drinking at the time, she appears to enjoy drinking (including shots) on at least a weekly basis, as she has posted on social media with a call out to fellow girls who likes to "balance a couple drinks on the weekends and prioritize their fitness!"

(with a video including a caption: "WHERE ARE MY GIRLS IN THEIR 20'S WHO LOVE TAKING SHOTS"). A true and correct copy of this post by Ms. Navarro on or about December 8, 2025 (with her Threads account name redacted) is shown here:



5d ...

Where are the girlies at who can balance a couple drinks on the weekends and prioritize their fitness! 💗

hii 🤭






1

26. Ms. Navarro posted the above text and video on her Threads account on or about December 8, 2025, i.e. one day *before* her December 9, 2025 TikTok video disparaging Avrek Law and its attorneys as described herein.

27. The above Threads post from December 8, 2025 showing Ms. Navarro enjoying shots was two days before another TikTok video she posted on or about December 10, 2025, in which she claims "to this day" to be spitting up blood clots from her claimed assault/choking on August 15, 2025 (i.e. almost four months later). A true and correct screenshot from that video, including graphic images she includes at the end when claiming she is still spitting up blood from the August incident, follows:

28. The above images from Ms. Navarro's December 10, 2025 TikTok video show significantly more and darker blood than the photographs of blood in her spit allegedly taken immediately after the August 15, 2025 incident, as shown in the below true and correct screenshots of Ms. Navarro's September 18, 2025 video:




29. A video Ms. Navarro posted on September 22, 2025 confirms that she did not continue seeing blood in her spit continuously from August 15, 2025 onward (as her December 10, 2025 video suggests); she instead began spitting up clots of blood starting the day after she posted her TikTok video on September 18, 2025. Specifically, in her September 22nd video—captioned "Is it my body trying to release the trauma?…"—she says: "The day after I posted my TikTok video sharing my story

about the assault, I woke up spitting clots of blood. Thick clots of dark red blood, thick clots of bright red blood, and mind you, it's been about 6-7 weeks since the incident." In other words, Ms. Navarro started spitting up blood clots 6-7 weeks after the claimed incident, around the time she began posting about it on social media.

30. On information and belief, if Ms. Navarro started spitting up blood clots on or about September 19, 2025 (with what appears to be significantly more blood than what she photographed on August 15, 2025), and has not yet done so, she should consult with medical professionals immediately, as she may be suffering from a serious infection, lung condition, esophageal issue, or even liver disease.

31. Ms. Navarro's September 18, 2025 video post about the August 15, 2025 "assault" and related reels with *e.g.* footage of her in the ER (dramatic music added) received extensive views. On information and belief, content related to her "assault" garnered more views for her other content, including content designed to promote and drive customers to her services as a personal trainer and/or fitness coach.

32. Not satisfied with her unfounded attempts to ruin an innocent man's personal reputation (with posts/videos about the "assault" garnering plenty of views in September-November 2025), Ms. Navarro is now disparaging Avrek Law.

33. Specifically, on or about December 9, 2025, Ms. Navarro posted a disparaging video on TikTok telling all of her followers that Avrek Law is a personal injury firm that ironically hires (and/or keeps on staff) attorneys who are perpetrators of assault. Around this time, Ms. Navarro likewise began posting (and soliciting others to post) comments on Avrek Law's social media accounts and promotional reels to the same effect, i.e. communicating directly to Avrek Law's followers, including current and/or potential clients, that Avrek Law is a firm that has kept a perpetrator of assault on staff (*e.g.* from Ms. Navarro herself: "Make [sic] a reel about how ironic it is to have a personal injury attorney cause harm to a woman for no reason!!" and from another poster who presumably saw her reel: "Didn't one of you abuse an innocent woman in Newport," "what about abusing woman," and "cucks").

34. On information and belief, Avrek Law's clients and potential clients viewing these disparaging comments posted by Ms. Navarro (and those who have apparently seen her posts and then posted on her behalf) are likely to consider her defamatory message—i.e. that Avrek Law hires/keeps on staff attorneys who commit violence against women—material to their decision as to hiring this law firm and/or a personal injury attorney associated with it. Further on information and belief, based on Defendant's disparagement, clients and/or potential clients who believe her claim would likely choose not to hire Avrek Law and/or discourage others from doing so.

35. Ms. Navarro's video reel on her account and related, disparaging comments on Avrek Law's posts were thus intended to cause and have already caused harm to Avrek Law's goodwill and business reputation, including pecuniary harm, based on Ms. Navarro's efforts to promote herself as a victim while painting her purported "assailant" and anyone affiliated with him (in particular, Avrek Law) as guilty until proven innocent.

36. Avrek Law and its attorneys work tirelessly to help people who have been physically harmed on a daily basis. On information and belief, based on everything Ms. Navarro has posted, her claim to have been physically assaulted by an Avrek attorney at the Pendry is false, and Avrek Law will obtain the video footage to prove it. Further on information and belief, based on all evidence adduced to date, that footage will finally put Ms. Navarro's false claim to rest and vindicate the attorney whom she has personally targeted to promote her own platform.

37. In the meantime, the substantial and irreparable harm that Ms. Navarro has inflicted and continues to inflict on the reputation of Avrek Law and its attorneys to publicize her already debunked, false claim of victimhood must stop. Her relentless smear campaign conducted on Avrek Law's social media—while apparently good for garnering more "views" for her account and inciting followers to attack Avrek Law—is baseless and unlawful. Avrek Law brings this action to bring the truth to light and to halt that unfounded smear campaign until evidence-based justice can be secured.

**FIRST CLAIM FOR RELIEF**

**(Federal Product Disparagement – The Lanham Act, 15 U.S.C. § 1125)**

38. Plaintiff repeats and realleges the foregoing allegations and incorporates them by reference, as though fully and completely set forth herein.

39. Through Defendant's social media posts and videos (including at least the December 9, 2025 reel posted on Ms. Navarro's TikTok platform), Defendant generates attention and followers, and on information and belief thereby secures financial benefits, including but not limited to by directing consumers to hire her as a personal trainer and/or fitness coach. Therefore, Defendant's social media content at issue constitutes commercial speech, and as described herein, Defendant has caused false and misleading advertisements concerning Avrek Law to enter interstate commerce *inter alia* to promote Defendant and her own services.

40. In making such false and misleading representations about Avrek Law, and by other communicative conduct, Defendant acted intentionally, with knowledge of, and in willful and conscious disregard of Avrek Law's rights.

41. Defendant's misleading and false representations and other communicative conduct tended to and/or actually deceived a substantial portion of the intended audience, including viewers of Avrek Law's social media content who are Avrek Law's current and/or potential clients (and whom Defendant intended to dissuade from using Plaintiff's legal services per Defendant's false statements), and were material in that these misrepresentations have and will likely influence decisions of the public and sully Plaintiff's reputation to its commercial detriment.

42. As a direct and proximate result of the foregoing, Plaintiff has been and is likely to be further injured by both a diversion of sales and by a lessening of the goodwill associated with Plaintiff's business, in an amount to be determined at trial.

43. The damage to Plaintiff's business, goodwill, and reputation is such as to warrant the trebling of damages under 15 U.S.C. § 1117(a) in order to provide just compensation.

**SECOND CLAIM FOR RELIEF**

**(Common Law Defamation and Trade Libel, i.e. Product Disparagement / Trade Libel / Injurious Falsehood)**

44. Plaintiff repeats and realleges the foregoing allegations and incorporates them by reference, as though fully and completely set forth herein.

45. Defendant published false, defamatory statements and other communicative conduct about the quality of the services provided by Plaintiff, as set forth above, including but not limited to representing to Avrek Law's current and/or potential clients that Avrek Law knowingly and willfully hires and/or keeps on staff attorneys who have violently assaulted women. Defendants published these statements and other communicative conduct to at least thousands of potential clients on Avrek Law's social media, despite Ms. Navarro knowing—based on the objective review of police and Pendry staff who saw video footage of the incident she claimed to be assault—that such statements are false and would harm Plaintiff's reputation, on information and belief with the intention for Defendant to profit therefrom by garnering more viewers for her own social media accounts, and ultimately, paying clients for her own fitness-related services.

46. Defendant's defamatory statements and other communicative conduct impugned Plaintiff's reputation, prejudiced Plaintiff in the conduct of its business, and deterred prospective customers of Plaintiff from doing business with Avrek Law, such that these statements constitute defamation *per se*.

47. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has sustained and will continue to sustain substantial injury to its business and reputation, in an amount to be determined at trial.

48. The conduct of Defendants was intentional, willful, malicious and knowing, thus justifying an award of punitive damages to deter such egregious conduct in the future.

## THIRD CLAIM FOR RELIEF

**(Intentional Interference with Prospective Economic Relations)**

49. Plaintiff refers to and incorporates by reference the preceding paragraphs, inclusive, as if fully alleged herein.

50. Plaintiff had actual and/or potential economic relationships with numerous current and/or potential clients, who were reasonably likely to produce an economic advantage to Avrek Law by directly engaging with the firm and/or recommending friends and family to work with Avrek Law in connection with any personal injury or other case.

51. Defendant knew of these relationships, because Defendant viewed Avrek Law's social media content in order to post comments on each said promotional post, referring these potential Avrek Law clients to her own video reel accusing an Avrek Law attorney of assault (and in turn, her page promoting *inter alia* her own employment as a fitness instructor).

52. Through Defendant's social media posts, on her own account and in comments on Avrek Law's account, referring Avrek Law's audience to her own platform, Ms. Navarro has spread misinformation and statements harmful to Plaintiff's reputation, *inter alia* that Avrek Law attorneys hurt women.

53. Defendant knew at the time she made these representations that they were false as to her, personally, and/or that she had no reasonable ground for believing the representations to be true (including as to her and as to other women), and made them nonetheless in order to dissuade clients from continuing with or seeking legal services through Avrek Law, and thereby intended to interfere with Plaintiff's relationship with these current and potential consumers.

54. Defendant's false statements were independently wrongful because they constituted defamation, as alleged above.

55. As a result of said interference, the potential and current clients were lost. Plaintiff has been damaged in an amount to be proved at trial.

**PRAYER**

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

1. That the Court enter judgment in favor of Avrek Law and against Defendant on each and every claim alleged herein;

2. That Defendant, and any of her partners, agents, servants, distributors, affiliates, employees, representatives, and all those in privity or acting in concert with Defendant or on her behalf, be permanently enjoined and restrained from publishing any false, defamatory, and/or libelous statements or other communicative conduct regarding Avrek Law and its attorneys in her commercial advertisements (including but not limited to on social media);

3. That Defendant, and each of her partners, agents, servants, distributors, affiliates, employees, representatives, and all those in privity or acting in concert with Defendant or on her behalf, be ordered to remove any previously published false, defamatory, and/or libelous statements or other communicative conduct regarding Avrek Law and its attorneys in her commercial advertisements (including but not limited to on social media);

4. Compensatory damages according to proof;

5. Punitive damages; and

6. For such other and further relief as this Court may deem just and appropriate.

Dated: December 16, 2025

RUTAN & TUCKER, LLP
MEREDITH L. WILLIAMS

By: */s/ Meredith L. Williams*
Meredith L. Williams
Attorneys for Plaintiff
AVREK LAW FIRM, APLC

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in this action

Dated: December 16, 2025

RUTAN & TUCKER, LLP

By: */s/ Meredith L. Williams*
Meredith L. Williams
Attorneys for Plaintiff
AVREK LAW FIRM, APLC